IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------------X
**SHONTIA MYERS**

           PLAINTIFF                             Civil Action No.

           v.

                                                          COMPLAINT

**COMMUNITY YOUTH AND WOMEN'S
ASSOCIATION, INC. and
YOUNG WOMEN'S CHRISTIAN**                     **Trial by Jury**
**ASSOCIATION OF COATSEVILLE**

           DEFENDANTS
-------------------------------------------------------------------X

Plaintiff, Shontia Myers, by and through her attorneys, Derek Smith Law Group, PLLC, upon information and belief, complains against Defendants as follows:

## INTRODUCTION

1. Plaintiff, Shontia Myers, had a statutory and constitutional right to a workplace free from sex-based discrimination. The Defendant has actual knowledge of the severe and pervasive sex-based harassment to which Plaintiff was subjected, thereby creating a hostile work environment when they failed to appropriately address the harassment. In acting with deliberate indifference to that knowledge, Defendants deprived Plaintiff of her Constitutional rights in violation of Title VII of the Civil Rights Act of 1964 as more fully set forth herein.

2. Plaintiff also seeks to remedy violations of the laws of Pennsylvania State and Pennsylvania Common law to redress injuries suffered by Plaintiff resulting from the sex-based discrimination

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, 1343 and 2201, which gives District Courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

4. This Court has jurisdiction in that this action involves a Federal Question.

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1343, which gives the district courts original jurisdiction over any (a) civil action authorized by law to be brought by any person to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by and Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), because Defendants do business in Coatesville, Pennsylvania, and all or a substantial part of the events which give rise to the claim herein occurred in this district.

## PARTIES

7. Plaintiff, Shontia Myers (hereinafter also referred to as "MYERS") is an individual African American female, who is a resident of the Commonwealth of Pennsylvania.

8. Defendant, Community Youth and Women's Alliance (hereinafter also referred to as "CYWA") is a substance abuse organization based in Coatesville, PA that was founded in 1874. As of 2019 they possessed $2.1 million in revenue and $2.4 million in assets. CYWA provide services to women & youth of Coatesville and the vicinity to improve their spiritual, mental, social, and physical condition.

9. At all times material, Community Youth and Women's Alliance, Inc. and Young Women's Christian Association of Coatesville did, and continues to do business at 423 East Lincoln Highway, Coatesville, PA 19320. They also run a drug and alcohol, program through the Samara House which is where Plaintiff performed her job duties.

10. At all times material, Plaintiff was an employee of the Defendants.

## APPLICABLE LAW AND POLICY

11. This is an action seeking damages to redress the injuries Plaintiff has suffered, and continues to suffer, resulting from unlawful employment discrimination by Defendant against Plaintiff in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title

VII")), and to remedy violations of the Pennsylvania Human Relations Act, 43 P.S. § § 951, *et. seq.*("PHRA").

12. Plaintiff further seeks relief due to the defendants' pattern and practice of intentional and systematic sex-based discrimination.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. On February 25, 2021, Plaintiff dual filed a Charge of Discrimination (Charge No. 530-2021-02236) with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC).

14. On September 10, 2021, Plaintiff received a Notice of Right to Sue from the EEOC in response to her Charge of Discrimination. The PHRC has yet to issue a response and is named here to preserve Plaintiff's ability to Amend the Complaint at the time of PHRC claim ripeness.

## STATEMENT OF FACTS

15. Plaintiff, Shontia Myers is an individual African American female, who is a resident of the Commonwealth of Pennsylvania.

16. Defendant, CYWA is a substance abuse organization based in and operating from Coatesville, PA. Since 1874, CYWA provides services to the women and youth of Coatesville and the surrounding area with the objective of improving spiritual, mental, social, and physical conditions to eliminate poverty and thereby improve the overall quality of life in their community.

17. On or around November 17, 2020, Plaintiff was hired by Defendant as a Counselor Aide.

18. At the time of hiring, Plaintiff was informed that she would be temporarily assigned as a Counselor Aide until such time that the current Counselor was terminated from the position.

19. Plaintiff was to be trained as a Counselor. After several weeks of training, Plaintiff informed the Samara House Director, Angel Barrett, that she required more Counselor training. Plaintiff reported that her coworkers performed their duties differently than the training prescribed. Plaintiff requested that she be transferred back to the first shift to train with Barrett for the Drug and Alcohol Counselor position.

20. On or about January 1, 2021, Plaintiff advised Barrett that she was pregnant. Barrett replied by asking how far along she was in her pregnancy. Plaintiff responded that she was 3 months pregnant.

21. Soon after informing Defendant of her pregnancy, Plaintiff requested a more structured workday to allow for breaks. Other non-pregnant employees were able to take breaks throughout the workday. Plaintiff was never given this accommodation.

22. In or around the same time, Plaintiff informed Defendant that she had been diagnosed a high-risk pregnancy. Plaintiff explained that due to the nature of her condition, she would be required to attend more pregnancy related appointments. Plaintiff also explained that these appointments would be scheduled around her employment obligations.

23. On or around January 15, 2021, Plaintiff continued to request further training for the Drug and Alcohol Counselor position. Defendant promised that Plaintiff would be placed on a Professional Development Plan, thereby providing the necessary training for the Counselor position.

24. On or around January 15, 2021, Plaintiff reported that clients were harassing staff for extra smoke breaks, a violation of Defendant's policies. Plaintiff made this report to both of her Supervisors, Angel Barrett and Louise Robinson.

25. At this point in her employment with Defendant, Plaintiff had never been disciplined, reprimanded, or informed of any complaints against her by clients or their families.

26. On January 28, 2021, Plaintiff learned that Barrett began speaking with clients about the incident that occurred on January 15, 2021. The investigation concerned the smoke break requests of the patients that had previously been reported by Plaintiff on January 15, 2021. Plaintiff was never interviewed during the investigation. The only response to the Plaintiff came from Lisa Sallad, Superintendent Residential Group Center, who told Plaintiff that "that they(the clients) are CYWA's bread and butter". This bogus investigation was done in anticipation of terminating Plaintiff due to her pregnancy and was pretext for her termination.

27. Termination of Plaintiff occurred on January 29, 2021. Lisa Sallad, called Plaintiff "lazy and lax due to her pregnancy. Plaintiff believes that she was terminated due to her pregnancy and that the investigation that occurred was pretext for her firing based upon the statement.

28. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, and emotionally distressed.

29. As a result of Defendants' conduct and comments, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

30. Plaintiff further claims aggravation activation and/or exacerbation of any preexisting condition(s).

31. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

32. As Defendants' conduct has been willful, malicious, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages be entered against the Defendant.

33. Plaintiff claims that Defendants unlawfully discriminated against and terminated Plaintiff due to her pregnancy coupled with her complaint and opposition of the unlawful conduct of Defendants related to the above protected class.

34. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

35. The above are just some examples of the discrimination and retaliation to which Defendant subjected Plaintiff to on a continuous and on-going basis throughout Plaintiff's employment.

36. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

37. Furthermore, Plaintiff claims that Defendant owed and breached its duty to Plaintiff to prevent this harassment, discrimination, and retaliation and is therefore liable for negligence.

## FIRST COUNT
## FOR DISCRIMINATION UNDER TITLE VII
## AGAINST DEFENDANT

38. Plaintiff repeats and realleges each allegation made in the above paragraphs of this complaint.

39. Title VII states in relevant parts as follows, § 2000e-2. [Section 703](a) Employer Practices:

   a. "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

40. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et. seq., by discriminating against Plaintiff because of her sex.

## SECOND COUNT
## FOR RETALIATION UNDER TITLE VII
## AGAINST DEFENDANT

41. Plaintiff repeats and realleges each allegation made in the above paragraphs of this Complaint.

42. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

    a. "(1) to… discriminate against any of his employees… because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

43. Defendants retaliated against Plaintiff because she opposed and reported Defendants' unlawful employment practices.

## THIRD COUNT
## PREGNANCY/SEX DISCRIMINATION UNDER TITLE VII
## AGAINST DEFENDANT

44. Plaintiff repeats and realleges each allegation made in the above paragraphs of this Complaint.

45. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

    a. "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive

       or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

46. In 1978, Congress amended Title VII to prohibit discrimination based on pregnancy as follows:

    a. "The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability to work, and nothing in section 703(h) of this title shall be interpreted to permit otherwise."

47. At all times material, Plaintiff was a pregnant person entitled to the protections of Title VII.

48. At all times material, Defendant had actual knowledge of Plaintiff's pregnancy.

49. Defendant took materially adverse action against Plaintiff by terminating her employment.

50. At all times material, Plaintiff's pregnancy status was the motivating and/or determinative factor in Defendant's decision to terminate Plaintiff's employment.

51. Defendant's decision to terminate Plaintiff because of her pregnancy status was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

52. Defendant's decision to terminate Plaintiff's employment because of Plaintiff's pregnancy is an unlawful employment practice in violation of Title VII.

53. As a direct and proximate result of Defendant's unlawful termination of Plaintiff's employment in violation of Title VII, Plaintiff has suffered and continues to suffer emotional and financial harm.

## FOURTH COUNT
## DISABILTY DISCRIMINATION IN VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT ("ADA")
## AGAINST DEFENDANTS

54. Plaintiff repeats and realleges each allegation made in the above paragraphs of this Complaint.

55. The ADA prohibits discrimination on the basis of a disability, and provides:

    a. "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

42 U.S.C. § 12112(a).

56. At all times material, Defendant was a covered entity subject to the requirements of the ADA.

57. At all times material, Plaintiff was a qualified individual with a disability entitled to the protections of the ADA.

58. At all times material, Defendant had actual knowledge of Plaintiff's status as a qualified individual entitled to the protections of the ADA.

59. Defendant terminated Plaintiff's employment on January 29, 2021.

60. At all times material, Plaintiff's disability status was the motivating and/or determinative factor in Defendant's to terminate Plaintiff's employment.

61. Defendant's decision to terminate Plaintiff because of her disability status was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

62. Defendant's decision to terminate Plaintiff's employment because of Plaintiff's employment because of Plaintiff's disability is an unlawful employment practice in violation of the ADA.

63. As a direct and proximate result of Defendant's unlawful termination of Plaintiff's employment in violation of ADA, Plaintiff has suffered and continues to suffer emotional and financial harm.

## FIFTH COUNT
## FAILURE TO PROVIDE REASONABLE ACCOMODATIONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA") AGAINT DEFENDANT

64. Plaintiff repeats and realleges each allegation made in the above paragraphs of this Complaint.

65. Under the ADA, an employer discriminates against an individual on the basis of disability when it does "not mak[e] reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the] entity." 42 U.S.C. § 12112(b)(5) (A).

66. At all times material, Defendant was a covered entity subject to the requirements of the ADA.

67. At all times material, Plaintiff was a qualified individual with a disability entitled to the protections of the ADA.

68. Specifically, Plaintiff's pregnancy being classified as "high risk" is a pregnancy related medical condition that qualifies as a disability within the meaning of the ADA.

69. At all times material, Defendant had actual knowledge of Plaintiff's status as a qualified individual with a disability entitled to the protections of the ADA.

70. Plaintiff made express requests to Defendant for reasonable accommodations for her pregnancy-related disability.

71. At all times material, Defendant had a duty under the ADA to engage in the interactive process to determine whether Plaintiff's disability could be reasonably accommodated without undue hardship.

72. At all times material, Plaintiff made good-faith efforts to engage Defendants in the interactive process.

73. Defendant failed to engage in the interactive process and/or provide Plaintiff with reasonable accommodations in violation of the ADA.

74. At all times material, Defendant could have provided Plaintiff with reasonable accommodations for her pregnancy-related disability without undue hardship.

75. Defendant terminated Plaintiff's employment on January 29, 2021.

76. Defendant's failure to provide Plaintiff with reasonable accommodations for her pregnancy-related disability was intentional, willful, and made with reckless indifference to Plaintiff's federally protected rights.

77. Defendants' failure to provide Plaintiff with reasonable accommodations for her pregnancy-related disabilities is an unlawful employment practice in violation of the ADA.

78. As a direct and proximate result of Defendants' failure to provide Plaintiff with reasonable accommodations in violation of the ADA, Plaintiff has suffered and continues to suffer emotional and financial harm.

## SIXTH COUNT
## RETALIATION IN VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT ("ADA")
## AGAINST DEFENDANT

79. Plaintiff repeats and realleges each allegation made in the above paragraphs of this Complaint.

80. Section 503 of the ADA prohibits retaliation, and provides:

    a. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

81. Plaintiff engaged in protected activity under the ADA including, but not limited to:

    a. Plaintiff informed Defendant of her pregnancy-related disability, and expressly requested reasonable accommodations for that disability;
    b. Opposing Defendants' unlawful employment practices.

82. Defendant took adverse employment action against Plaintiff by terminating Plaintiff's employment on January 29, 2021.

83. Plaintiff's prior protected activity and/or opposition to Defendants' unlawful employment practices was the motivating and/or determinative factor in Defendants' decision to terminate Plaintiff's employment on January 29, 2021..

84. The temporal proximity between Plaintiff's protected activity and Defendants' decision to take materially adverse employment action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

85. Defendants' decision to terminate Plaintiff in retaliation for Plaintiff's prior protected activity and/pr opposition to Defendants' unlawful employment practices was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

86. Defendants' decision to terminate Plaintiff's employment in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of the ADA.

87. As a direct and proximate result of Defendants' retaliatory termination of Plaintiff's employment in violation of the ADA, Plaintiff has suffered and continues to suffer emotional and financial harm.

**SEVENTH COUNT**
**PREGNANCY/SEX DISCRIMINATION IN VIOLATION OF**
**THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRRA")**
**AGAINST DEFENDANTS**

88. Plaintiff repeats and realleges each allegation made in the above paragraphs of this Complaint.

89. The PHRA makes it an unlawful discriminatory practice:

    a. For any employer because of the… non-job related handicap or disability… of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate

> with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 Pa. Stat. Ann. § 955(a).

90. At all times material, Defendants were covered entities subject to the requirements of the PHRA.

91. At all times material, Plaintiff was a qualified individual with a disability entitled to the protections of the PHRA.

92. At all times material, Defendants had actual knowledge of Plaintiff's status as a qualified individual disability entitled to the protections of the PHRA.

93. Defendants terminated Plaintiff's employment on January 29, 2021.

94. At all times material, Plaintiff's disability status was the motivating and/or determinative factor in the decision to terminate Plaintiff's employment.

95. The Defendants' decision to terminate Plaintiff because of Plaintiff's disability status was intentional, willful, and made with reckless indifference to Plaintiff's protected rights under the PHRA.

96. The Defendants' decision to terminate Plaintiff's employment because of Plaintiff's disability is an unlawful employment practice in violation of the PHRA.

97. As a direct and proximate result of the unlawful termination of Plaintiff's employment in violation of the PHRA by Defendants, Plaintiff has suffered and continues to suffer emotional and financial harm.

## EIGHTH COUNT
## FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT AGAINST DEFENDANTS

98. Plaintiff repeats and realleges each of the allegations made in the above paragraphs of this Complaint.

99. The PHRA and state regulations supplementing it require employers to make reasonable accommodations to the known disabilities of an employee unless doing so would impose an undue hardship on the employer. See, 43 Pa. Stat. Ann. § 955(a), 959(f)(1), and 16 Pa. Code § 44.14(a).

100. At all times material, Plaintiff was a qualified individual with a disability entitled to the protections of the PHRA.

101. Specifically, Plaintiff's classification as a "high-risk pregnancy" is a pregnancy-related medical condition that qualifies as a disability within the meaning of the PHRA.

102. At all times material, Defendant had actual knowledge of Plaintiff's status as a qualified individual with a disability entitled to the protections of the PHRA.

103. Plaintiff made express requests for reasonable accommodations for her pregnancy-related disability.

104. At all times material, Defendants had a duty under the PHRA to engage in the interactive process to determine whether Plaintiff's disability could be reasonably accommodated without undue hardship.

105. At all times material, Plaintiff made good-faith efforts to engage in the interactive process.

106. Defendants failed to engage in the interactive process and/or provide Plaintiff with reasonable accommodations for her disability without undue hardship.

107. Defendants terminated Plaintiff's employment on January 29, 2021.

108. The failure of Defendants to provide Plaintiff with reasonable accommodations for her pregnancy-related disabilities was intentional, willful, and made with reckless indifference to Plaintiff's rights under the PHRA.

109. The failure of Defendants to provide Plaintiff with reasonable accommodations for her pregnancy-related disabilities is an unlawful discriminatory practice in violation of the PHRA.

110. As a direct and proximate result of the failure of Defendants' failure to provide Plaintiff with reasonable accommodations in violations of the PHRA, Plaintiff has suffered and continues to suffer emotional and financial harm.

### NINTH COUNT
### RETALIATION IN VIOLATION OF THE
### PENNSYLVANIA HUMAN RELATIONS ACT
### AGAINST DEFENDANTS

111. Plaintiff repeats and realleges each allegation made in the above paragraphs of this Complaint.

112. The PHRA prohibits retaliation, making it an unlawful discriminatory practice:

    a. "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified, or assisted, in any manner, in any investigation, proceeding, or hearing under this act."

43 Pa. Stat. Ann. § 955(d).

113. Plaintiff engaged in protected activity under the PHRA including, but not limited to:
     a. Informing Defendants of her pregnancy-related disability, and expressly requesting reasonable accommodations for that disability.
     b. Opposing Defendants' unlawful employment practices.

114. Plaintiff's prior protected activity and/or opposition to Defendants' unlawful employment practices was the motivating and/or determinative factor in Defendants' decision to terminate Plaintiff's employment on January 29, 2021..

115. The temporal proximity between Plaintiff's protected activity and the Defendants' decision to take materially adverse employment action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

116. Defendants' decision to terminate Plaintiff in retaliation for Plaintiff's prior protected activity and/or opposition to Defendants' unlawful employment practices, was intentional, willful, and made with reckless indifference to Plaintiff's protected rights under the PHRA.

117. Defendants' decision to terminate Plaintiff's employment in retaliation for Plaintiff's prior protected activity is an unlawful discriminatory practice in violation of the PHRA.

118. As a direct and proximate result of Defendants' retaliatory termination of Plaintiff's employment in violation of the PHRA, Plaintiff has suffered and continues to suffer emotional and financial harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgement against the named Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and lost wages, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs interest, and disbursement of action, and for all other relief available under the law or at equity.

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

Date: September 20, 2021            **DEREK SMITH LAW GROUP, PLLC**

By: _____
Scott E. Diamond, Esq.
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: (215) 391-4790
scott@dereksmithlaw.com
*Attorneys for Plaintiff, Shontia Myers*